Nicholas A. Carlin, State Bar No. 112532
PHILLIPS, ERLEWINE, GIVEN and CARLIN LLP
39 Mesa Street, Suite 201
San Francisco, CA   94129
Tel: 415-398-0900
Fax: 415-398-0911

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZANA BRISKI,<br><br>          Plaintiff,<br><br>v.<br><br>DOROTHY HERSEY,<br><br>          Defendant. | **Case No. 4:17-cv-02675-KAW**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>Complaint Filed:   May 9, 2017<br>Trial Date:            Not Set |

# MEMORANDUM OF POINTS AND AUTHORITEIS

## I. INTRODUCTION

Plaintiff Zana Briski hereby seeks a temporary restraining order ("TRO") requiring Defendant Dorothy Hersey to immediately return possession of valuable and unique artwork belonging to her. Plaintiff is entitled to this relief because (1) she is highly likely to succeed on both her breach of contract and conversion claims (indeed default has already been entered against Defendant); (2) absent a TRO, Plaintiff faces irreparable harm in the form of the imminent threat of damage or destruction of her artwork; (3) the balance of harms sharply favors a TRO because there is no harm to Defendant of any kind and Plaintiff has a significant risk of facing further pecuniary and emotional damage without the immediate return of her artwork; and (4) the public interest favors returning the artwork to its creator.

## II. FACTUAL BACKGROUND

Plaintiff is a world renowned artist, photographer and Academy Award winning filmmaker living in New York. (Briski Declaration ¶ 1.) In October 2016 she consigned eleven of her framed photographs and one photograph by fellow artist Chuck Kelton to defendant Dorothy Hersey, a purported art dealer in Menlo Park, California. (Briski Decl. ¶ 2-4 & Ex. 1)

When Defendant failed to sell any of the artwork, Plaintiff terminated the consignment and demanded return of the artwork. The agreed upon due date was the end of February 2017. (Briski Decl. ¶ 5 & Ex. 2.) Defendant originally agreed, but since then she has failed and refused to return the artwork giving one excuse after another. (Briski Decl. ¶ 6-9 & Ex. 3.) Plaintiff finally offered to pay to have the artwork shipped back to her, even though the cost of shipment was Defendant's responsibility under the parties' agreement. (Briski Decl. ¶ 10.) But now Defendant is refusing even to allow Plaintiff to do that, stating: "The artwork is not leaving now." (Carlin Declaration ¶ 12 & Ex. 2.)

Plaintiff has further learned that Defendant was evicted from her home on June 20, 2017, the place where Plaintiff's artwork was being held, and the Defendant is further involved in other extreme disputes with her landlord, which are now in litigation. (Carlin Decl. ¶¶ 13-14, 16-17 & Exs. 4-5). The evicting landlord informed Plaintiff, through counsel, that Plaintiff's artwork was

not at the scene of the eviction. Plaintiff's counsel called Defendant to attempt to determine the location of Plaintiff's artwork, but Defendant would not specify its exact location, stating variously that it was "here" (at the house she had just been evicted from), in boxes, in storage, or in her "gallery". (Carlin Decl. ¶ 17.) She would not agree to allow Ms. Briski to pick up her artwork unless Plaintiff dropped the lawsuit. (Id.)

Plaintiff has sued Defendant here for breach of contract and for conversion. (Carlin Decl. ¶ 2 & Ex. 1.) Defendant has not answered or otherwise responded to the Complaint and default has been entered against her. (ECF No. 12.)

## III. LEGAL ARGUMENT

### A. LEGAL STANDARD FOR A TRO

"The standard for issuing a TRO is the same as that for the issuance of preliminary injunction." *Newland North America Foods, Inc. v. H.P. Skolnick, Inc.*, No. 5:13-cv-00934-EJD, 2013 WL 792672, at *2 (N.D. Cal. Mar. 4, 2013). Accordingly, in the Ninth Circuit, Plaintiff must pass one of two tests. *Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 941–42 (N.D. Cal. 2015) (describing *Winter* test and *Farris* tests).

Under the *Winter* test, Plaintiff must show (1) that she is likely to succeed on the merits of her claim; (2) that she will suffer irreparable harm; (3) the balance of hardships tips in her favor; and (4) a temporary restraining order is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Under the *Farris* test, Plaintiff must show (1) serious questions going to the merits; (2) a balance of hardships that tips sharply towards the plaintiff; (3) a likelihood of irreparable injury; and (4) that the temporary restraining order is in the public interest." *Farris v. Seabrook*, 677 F.3d 858, 864. "Often described as a 'sliding scale' approach, *Farris* holds that 'the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.'" *Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 941–42 (N.D. Cal. 2015).

Because Plaintiff, here, technically seeks mandatory injunctive relief rather than the maintenance of the status quo, the Court must find that the facts and law "clearly favor" Plaintiff

PHILLIPS, ERLEWINE. GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
(415) 398-0900

on the merits analysis. *Katie A., ext rel. Ludin v. Los Angeles Cnty.*, 481 F.3d 1150, 1156 (9th Cir. 2007); *see also Awad v. Ziriax*, 670 F.3d 1111, 1126 (10th Cir. 2012) ("heightened standard does not affect the analysis of the other two preliminary injunction factors: irreparable injury and public interest").

### B.  PLAINTIFF IS LIKELY TO PREVAIL ON THE MERITS

#### 1.  Default has been Entered Against Defendant

Plaintiff has sued for Breach of Contract and Conversion.  She is highly likely to prevail on both claims.  Default has been entered against Defendant and she has given no indication that she disputes any aspect of the Complaint or intends to raise defenses against the well-pleaded allegations of the Complaint.  ECF No. 12.  The Complaint includes a prayer for injunctive relief in the very form requested here.  ECF No. 12; ECF No. 1 at ¶ 19(a) & (b), Prayer for Relief.  Plaintiff intends to move for default judgment shortly, but given the precarious position of her artwork, she cannot wait the months it may take for the Court to award her the injunction she seeks in her Complaint.

#### 2.  Plaintiff Will Prevail on Her Breach of Contract Claim

"The elements of breach of contract under California law are: (1) the existence of a contract; (2) plaintiff's performance under the contract; (3) defendant's breach of the contract; and (4) that plaintiff was damaged as a result of the breach." *Artifex Software, Inc. v. Hancom, Inc.*, No. 16-CV-06982-JSC, 2017 WL 1477373, at *2 (N.D. Cal. Apr. 25, 2017).

With respect to the breach of contract claim, the parties agreed in written correspondence that the end date of the consignment would be the end of February and that Defendant would return the works after that. Briski Decl. ¶5 & Ex. 2.  It is undisputed that Plaintiff performed at all times under the Agreement both in consigning the work and in arranging for the return of her work.  Likewise Defendant breached that contract by failing to return the artwork on the agreed upon date and "according to recognized art care and preservation standards." *Ball v. Cook,* No. 11 Civ. 5926(RJS), 2012 WL 4841735, at *9 (S.D.N.Y. Oct. 9, 2012) (refusal to turn over consigned work upon an artist's demand is breach of consignment agreement).  It is now the end of June and the works have not been returned, and Defendant now states baldly that she will not return the

PHILLIPS, ERLEWINE. GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA  94129
(415) 398-0900

artwork. Carlin Decl ¶ 12. She has also breached the section of the Agreement which provides that Defendant will pay for returning the artwork and that Defendant "agrees to handle and conserve the works according to recognized art care and preservation standards". Compl. ¶ 10(c); Briski Decl. 3(c) & Ex. 1. Defendant refused to use a reputable shipper that would "handle and conserve the works according to recognized art care and preservation standards." Briski Decl. ¶¶ 7-10 & Exs. 3-4; Carlin Decl. ¶¶ 3-7 & Ex. 2. Plaintiff is damaged because she is still not in possession of her artwork, months after it was agreed that the work would be returned to her; she has also suffered emotional distress because of the risk of damage or loss Defendant is subjecting her work to. Briski Decl. ¶ 12.

### 3. Plaintiff Will Prevail on Her Conversion Claim

Likewise, Plaintiff will prevail on her conversion claim. "Conversion is the wrongful exercise of dominion over the property of another." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (internal quotation omitted). "The elements of a conversion claim are (1) the plaintiff's ownership or right to possession of the property at the time of conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Id.* Here, it is undisputed that the works at issue belong to Plaintiff and that she had the right to request their return to her at any time. Defendant's failure to return the works upon request (and as requested) and instead, unilaterally deciding to hold onto them constitutes conversion. *Ball*, 2012 WL 4841735, at *7 (When artwork was consigned, "[defendant] interfered with Plaintiff's property rights by . . . failing or refusing to return any of Plaintiff's artwork following . . . demand of Plaintiff's counsel for the return of all of Plaintiff's property in [defendant's] possession, control, or custody."; Plaintiff damages in amount equal to value of artwork.)

### C. PLAINTIFF WILL BE IRREPARABLY HARMED WITHOUT A TRO

The requirement to show irreparable harm "is simply another way of saying that pecuniary compensation would not afford adequate relief or that it would be extremely difficult to ascertain the amount that would afford adequate relief." *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 721-722 (2009) (citations and punctuation omitted). "Irreparable harm" need not be "certain," but must demonstrate "immediate threatened injury." *Tamara v. El*

PHILLIPS, ERLEWINE. GIVEN & CARLIN LLP
39 Mesa Street, Suite 201 – The Presidio
San Francisco, CA 94129
(415) 398-0900

*Camino Hosp.*, 964 F. Supp. 2d 1077, 1087 (N.D. Cal. 2013) (quoting *Carbibean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988)).

The harm that would befall Plaintiff absent an injunction easily satisfies the definition of "irreparable harm." Given Defendant's precarious living situation, refusal to provide the current location of the artwork, and refusal to use a qualified art handler to ship Plaintiff's artwork back to her, Plaintiff is under immediate threatened injury, as her artwork could be completely destroyed by Defendant who is unwilling to give it back to her.

**D.    THE BALANCE OF THE HARMS FAVORS AN INJUNCTION**

If a TRO is improvidently issued, Defendant's only harm is that she has lost the illegitimate leverage she seems to believe she has by holding Plaintiff's artwork hostage. There is no dispute over who owns the artwork or who currently has the right to possess the artwork. There is no harm in ordering that Plaintiff get her artwork back immediately.

The harm to Plaintiff if the TRO is not granted and her artwork is lost, damaged or destroyed, is quite real and cannot be compensated with money alone. 58 Cal. Jur. 3d Specific Performance § 55 (breach of contract to transfer personal property "cannot be adequately compensated in damages . . . where the articles contracted for are of such a rare or sentimental value that they cannot be duplicated").

**E.    THE TRO IS IN THE PUBLIC INTEREST**

It is in the public's interest for Plaintiff to get her artwork back immediately and in accordance with recognized standards in the art world. It serves no interest of any kind to let Defendant hang onto artwork which she should have returned to Plaintiff months ago and has no interest in retaining. The longer it remains with Defendant the more likely Plaintiff's art (and therefore Plaintiff) suffers irreparable damage. The TRO would serve to mitigate any further damage to Plaintiff and in no way injure Defendant or the public at large. In fact, returning the work to Plaintiff will benefit the public who can access the art through any way Plaintiff, as its creator and rightful owner, so chooses.

### F.     NO BOND SHOULD BE ORDERED

Given that Defendant will not be harmed by the preliminary injunction being granted, Plaintiff respectfully requests that no bond be ordered.

### IV.    CONCLUSION.

For the reasons stated, Plaintiff respectfully requests that this Court issue the temporary restraining order and/or the order to show cause re: preliminary injunction requested hereinabove.

Dated: June 23, 2017                    PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP


                                        By:  /s/ Nicholas A. Carlin
                                             Nicholas A. Carlin
                                             Attorneys for Plaintiff